UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHARLES CURTIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No.: 3:06-cv-448 |
| ) | (Phillips/Shirley) |
| ALCOA INC., Individually and as ) | |
| Fiduciary of the Employees' Group ) | |
| Benefits Plan of Alcoa Inc., Plan II, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a class action brought pursuant to the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. §§ 141-187 (2006) and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2006) by a group of Alcoa retirees and/or their surviving spouses seeking fully funded lifetime retiree healthcare benefits. In essence, the class consists of retirees who retired between June 1, 1993 and June 30, 2006, their eligible spouses and dependants, and surviving spouses of such retirees and of active vested employees who died while still employed by Alcoa.[1] Currently pending is the plaintiffs'

---

[1] The actual language of the class parameters is yet to be resolved. Counsel for the parties have indicated that they are currently working to reach a mutual agreement on those parameters.

motion for a preliminary injunction pursuant to Rule 65, Fed. R. Civ. P. [Court File #117] and plaintiffs' demand for a jury trial [Court File #43 at p.25].

Because of the complexity of the issues involved and the sheer volume of documents produced (including Collective Bargaining Agreements (CBAs), Summary Plan Descriptions (SPDs), and other attached documentation for the years 1977 through 2006), the court has prepared this memorandum to aid the parties in efficiently preparing the matter for trial. This memorandum addresses three issues:

(1) Whether, pursuant to the Seventh Amendment, plaintiffs are entitled to a jury trial;

(2) Whether, pursuant to Rule 65(a)(2), the hearing of plaintiffs' motion for a preliminary injunction should be consolidated with the hearing of the trial on the merits;

(3) Whether, in light of *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), and its progeny, extrinsic evidence will be necessary to determine the intent of the parties to the relevant CBAs.

For the reasons that follow the court concludes the plaintiffs are not entitled to a jury trial, the preliminary injunction hearing will be consolidated with the trial on the merits, and the admission of extrinsic evidence will be necessary to determine the intent of the parties to the relevant CBAs.

# I.

## *Entitlement to a Jury*

The relevant statutes in this case, the LMRA and ERISA, are silent with regard to a right to jury trial. Therefore, if a right to a jury trial exists, it must be guaranteed by the Seventh Amendment. The Seventh Amendment states, "In suits at common law ... the right to trial by jury shall be preserved ...." U.S. Const., amend. VII, cl. 1. Though the language refers to the common law, the Seventh Amendment extends to statutory claims. *Curtis v. Loether*, 415 U.S. 189, 194 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights ... ."). In a statutory claim, there is a right to jury trial "if the statute creates *legal* rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Id.* (emphasis added).

To determine whether the relevant statute creates legal rights and remedies such that the Seventh Amendment is applicable, the court employs a two-part test: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417-18 (1987) (citations omitted). The latter inquiry "is the more important in our analysis." *Chauffeurs, Teamsters, & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).

The Sixth Circuit has, on several occasions, applied this test and concluded that the Seventh Amendment does not guarantee the right to a jury trial in claims brought under the relevant sections of ERISA and the LMRA. *See, e.g.*, *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998) (no jury trial for ERISA denial of benefits action); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 882-83 (6th Cir. 1997) (no jury trial for § 301 of the LMRA and § 502(a)(1)(B) of ERISA); *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996) (no jury trial for LMRA § 301 claim); *Bair v. Gen. Motors Corp.*, 895 F.2d 1094 (6th Cir. 1990) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir. 1988) (no jury trial for recovery of benefits under ERISA § 502).

Particularly instructive here are the *Golden* and *Bittinger* cases. In *Golden*, plaintiff class sought relief under § 301 of the LMRA, including a declaratory judgment, preliminary and permanent injunctive relief, and damages for the benefits denied to the class. *Golden*, 73 F.3d at 660. Applying the test dictated by *Tull* and its progeny, the Sixth Circuit determined that while the action was "comparable to a breach of contract claim – a legal issue," *id.* at 659 (quoting *Terry*, 494 U.S. at 570, 570 n. 7), under the second, more important prong of the inquiry, the relief sought was equitable, thereby defeating a right to jury trial. *Id.* at 660-61.

Though monetary damages are often legal in nature, the court further concluded that any monetary relief sought was equitable, as it was " 'incidental to or intertwined with

4

equitable relief.'" *Id.* at 661 (quoting *Terry*, 494 U.S. at 571). Though the Supreme Court has ruled that any legal *issues*, even though merely incidental to equitable issues, must be heard by a jury, *id.*; *see Tull*, 481 U.S. at 425 (quoting *Curtis*, 415 U.S. at 196 n.11), the Sixth Circuit held that "[a] court does not err in denying a jury trial where the monetary award sought is incidental to, or intertwined with, equitable relief." *Golden*, 73 F.3d at 661. According to the court, the monetary damages sought were "exactly the type of monetary relief that courts, and the Restatement, envision as equitable relief; they are incidental to the grant of equitable relief, yet are necessary to afford complete relief." *Id.* Because the relief sought was equitable and plaintiffs did "not assert legal rights," the Seventh Amendment is not applicable to claims under § 301 of the LMRA. *Id.* at 661-62.

Plaintiffs in the instant case seek, among other ERISA claims, relief under § 301 of the LMRA nearly identical to that sought in *Golden*: a declaratory judgment, injunctive relief, and an award of monetary damages to recompense the plaintiffs for benefits lost. It is therefore clear under *Golden* that there is no constitutional guarantee of a right to jury trial on demand for claims under LMRA § 301 for these forms of relief.

Also instructive is the *Bittinger* case, in which plaintiffs, like the case at bar, sought relief under § 301 of the LMRA and ERISA § 502(a)(1)(B). With regard to the LMRA claims, the Sixth Circuit followed *Golden* because, like in *Golden*, the relief sought was "clearly equitable in nature," as the monetary relief requested was "incidental and intertwined

5

with their fundamental request for a declaration that they are entitled to fully-funded retiree benefits." *Bittinger*, 123 F.3d at 883. With regard to the ERISA claim, after noting that Sixth Circuit precedent clearly established that claimants "under § 502(a)(3) ... are not entitled to jury trials," the court ruled:

> [plaintiffs'] claim is fundamentally a claim for benefits analogous to an action to enforce a trust and hence clearly equitable in nature. Their related requests for damages do not constitute separate claims that warrant their own jury right analysis: Rather, they are intertwined with the claims for benefits. The plaintiffs are thus also not entitled to a jury trial on their ERISA claim.

*Id.*

Moreover, Sixth Circuit precedent prior to *Bittinger* held that *all* claims under § 502 of ERISA are not entitled to a jury trial. *Bair*, 895 F.2d at 1096 ("[Under section 502 [29. U.S.C. § 1102] there is no right to jury trial.... *Daniel*'s denial of a right to recovery was broad, encompassing 'all actions for recover of benefits under section 502.' " (quoting *Daniel*, 839 F.2d at 268)).

Because plaintiffs request equitable relief under LMRA § 301 and ERISA § 502, these cases are directly apposite. Plaintiffs do not have a right to a jury trial by demand under the Seventh Amendment and their jury demand is therefore stricken.

II.

*Use of an Advisory Jury Under Rule 39(c)*

Though plaintiffs have neither a statutory nor constitutional right to jury trial by demand, there is no prohibition on the use of a jury trial. *Ellis v. Rycenga Homes, Inc.*, No. 1:04-cv-694, 2007 U.S. Dist. LEXIS 24127, at *14 (W.D. Mich. Apr. 2, 2007) (citing *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963)). Furthermore, the Federal Rules of Civil Procedure explicitly authorize the court to engage an advisory jury to assist in trying the case. The current text of Rule 39(c) states, "In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury ...." Fed. R. Civ. P. 39(c). Effective December 1, 2007, the Rule will read as follows: "In an action not triable of right by jury, the court, on motion or on its own ... may try any issue with an advisory jury ...." Fed. R. Civ. P. 39(c) (proposed).

Here, there being no right to jury trial, Rule 39(c) is applicable. Because this case involves complicated issues of fact, the court may find it useful to engage an advisory jury. The decision "to use an advisory jury is strictly discretionary," and therefore "that decision has been held to be unreviewable on appeal." 8 James Wm. Moore et al., Moore's Federal Practice – Civil § 39.40. Though the court engages an advisory jury, "[t]he responsibility for the decision rendering process remains with the

judge ...." 9 Wright & Miller, *supra*, § 2335.  Thus, the trial "is essentially a bench trial," 8 Moore, *supra*, § 39.40, and "[r]eview on appeal is of the findings of the court as if there had been no verdict from an advisory jury, and there can be no review of supposed errors relating to rulings before and instructions to the advisory jury."  *Id.*

If the court engages an advisory jury, the Sixth Circuit cautions, "Clearly the rule requires that the court's initiative in ordering a trial to an advisory jury must occur, and the parties be made aware of it, before the case is submitted."  *Thompson v. Parkes*, 963 F.2d 885, 888 (6th Cir. 1992) (court treated jury verdict as advisory only after verdict had been rendered).  Thus, "Rule 39(c) does not allow the trial court to transform a jury verdict into an advisory finding after the verdict is rendered ...."  *Id.* at 890.

At this time, the court has not determined if an advisory jury will be used.  The court will notify the parties well in advance of trial if an advisory jury is to be used.

III.

*Plaintiffs' Motion For Preliminary Injunction*

A preliminary injunction may issue upon satisfaction of a four-part test weighing (1) the likelihood of irreparable harm to the plaintiffs if relief is denied; (2)

the likelihood of harm to defendant if the injunction issues; (3) the likelihood the plaintiffs will succeed on the merits; and (4) the public interest. *McCoy v. Meridian Auto Sys. Inc.*, 39 F.3d 417, 421 (6th Cir. 2004). Plaintiffs contend that they are suffering irreparable harm in that they are a class of retired people, mostly over the age of 55, who have urgent and expensive medical needs making their payment of increased premiums, deductibles and higher co-pays an extreme burden. Plaintiffs also claim that the relative burden on Alcoa is low, noting that Alcoa has been able to pay them full benefits until January 2007 and still retain great profits. Finally, plaintiffs claim that they have shown a strong likelihood of success on the merits and that the CBAs, SPDs and other relevant documents are clear on their face that plaintiffs have in fact vested medical benefits that cannot now be reduced.

In the instant case, the most critical factor is the plaintiffs' likelihood of success on the merits. In order to properly evaluate plaintiffs' likelihood of success on the merits, it is necessary to consider the seminal case in this circuit on the issue of vesting of retiree medical benefits, *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) and its progeny. Several decisions within the Sixth Circuit have laid out the proper approach for determining whether retiree benefits exist beyond the expiration of a CBA. Many of them, including *Maurer v. Joy Technologies,* 2012 F.3d 907, 914-15 (6th Cir. 2000), rely on the following language from *Yard-Man*, 716 F.2d at 1479-80:

> Whether retiree benefits continue beyond the expiration of the collective bargaining agreement depends upon the intent of the parties. Clearly the parties to a collective bargaining agreement may provide for rights which will survive termination of their collective bargaining relationship. The parties may, for example, provide retiree insurance benefits which survive the expiration of the collective bargaining agreement. Any such surviving benefit must necessarily find its genesis in the collective bargaining agreement. The enforcement and interpre-tation of collective bargaining agreements under § 301 is governed by substantive federal law. However, traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies. Many of the basic principals of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should look first to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be constructed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises.

*Maurer*, 212 F.3d at 914-15 (quoting *Yard-Man*, 716 F.2d at 1479-80) (citations omitted)); *see also Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 578-79 (6th Cir. 2006) (applying *Yard-Man*).

In a situation where retiree benefits are vested, the retiree receives the benefits laid out in the CBA in effect when he or she retires. *Yolton*, 435 F.3d at 581 ("the retirement package available to someone contemplating retirement will change with

the expiration and adoption of CBAs, but someone already retired under a particular CBA continues to receive the benefits provided therein despite the expiration of the agreement itself"). Otherwise, retiree benefits, which are "typically understood as a form of delayed compensation or reward for past services, would be left to the contingencies of future negotiations." *Yard-Man*, 716 F.2d at 1482.

In determining whether a CBA vests benefits in retirees, courts have looked to a variety of factors including whether retiree medical benefits are tied to pension eligibility, *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir.1996), special durational limits that may indicate whether benefits are vested or not, *Yolton*, 435 F3d. at 581-82, and finally an inference that retiree benefits are "in a sense" status benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained." *Yard-Man*, 716 F2d. at 1482. There is an "inference" but not a "presumption" that the parties likely intended the benefits to continue as long as the beneficiary remains a retiree." *Williams v. WCI Steel Co.*, 170 F3d. 598, 605 (6th Cir.1999) (quoting *Yard-Man*, 716 F2d. at 1482). Although the part of the decision creating the *Yard-Man* inference has generated some controversy, it is undisputed that the *Yard-Man* inference remains the law. *See Yolton*, 535 F.3d at 579.

Shortly after *Yard-Man*, the Sixth Circuit stated that "there is no legal presumption based on the status of retired employees." *Int'l Union, United Auto Workers v. Cadillac Malleable Iron Co.*, 728 F.2d 807, 808 (6th Cir. 1994). Moreover, "*Yard-Man* does not shift the burden of proof to the employer, nor does it require specific anti-vesting language before a court can find that the parties did not intend benefits to vest. Rather, the *Yard-Man* inference, and other teachings of the opinion regarding contract interpretation and the consideration of extrinsic evidence, simply guide courts faced with the task of discerning the intent of the parties from vague or ambiguous CBAs." *Golden*, 73 F.3d at 656.

This court has carefully reviewed the documents which form the contract between the union and Alcoa with regard to retiree benefits seeking to discern the intent of the parties. On the one hand, all of the FAS-106 letters attached to the collective bargaining agreements beginning with the 1993 agreement appear to clearly permit Alcoa to put a cap on its contribution as early as 1997. Most of the summary plan descriptions following 1993 specifically reference the possibility of this cap. On the other hand, the CBAs and the SPDs appear to tie continued medical benefits to an employee's entitlement to pension benefits. This is an important factor that the Sixth Circuit has considered in determining whether benefits are vested. *See Golden*, 73 F.3d at 656.

The parties disagree with respect to whether the benefits had "specific durational limits" for non-retired workers, plaintiffs pointing to language indicating no durational limit (*i.e.*, that the benefits were for life), and defendant points to the language limiting the benefits to the remaining length of a particular CBA. *See Yolton*, 435 F.3d at 581-82. Finally, the *Yard-Man* inference must be considered.

Upon a careful review of the relevant contract documents, the court concludes that they are ambiguous. Reading the documents as a whole, it appears that the right hand often gives what the left hand attempts to take away. Under the circumstances, I find that extrinsic evidence will be admissible to determine the intent of the parties to the contracts. At this point, plaintiffs have not shown a likelihood of success on the merits. For that matter, neither has the defendant.

IV.

*Consolidation*

In part, Rule 65, Federal Rules of Civil Procedure, provides as follows:

<u>Consolidation of Hearing With Trial on Merits.</u> Before or after the commencement of the hearing of an application for preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible

13

> upon the trial of the merits becomes part of the record of the trial and need not be repeated upon the trial.

Rule 65(a)(2). If a Rule 65(a) injunction is granted, a speedy trial minimizes the potential adverse effect of what may prove to be an unjustified restraint on defendant; if relief under Rule 65(a) is denied, a quick disposition of the merits shortens the period in which plaintiff may be threatened by irreparable harm. 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2950 at p.233 (2007). Consolidation was expressly authorized in 1966 by the promulgation of Rule 65(a)(2) and was intended to encourage a practice that had long been recognized. *Id.* at 233-34. The Advisory Committee Note which was inserted at the time states that:

> The authority can be exercised with particular profit when it appears that a substantial part of the evidence offered on the application will be relevant on the merits and will be presented in such form as to qualify for admission on the trial proper.

*See* 1966 Advisory Committee Note to Rule 65(a)(2).

The court finds that the instant case is an appropriate one for consolidation of the preliminary injunction hearing and the trial on the merits. Virtually the same proof would be submitted at the preliminary hearing stage as at the trial on the merits. Consolidation will eliminate that problem. In addition, expediting the trial date can reduce some of the irreparable harm that plaintiffs may suffer. The court notes that during oral argument the defendant expressed a desire to get the case prepared and tried quickly. It also appears that a great deal of discovery has already been

completed. Therefore, the court concludes that this is an appropriate case to consolidate the hearing on the preliminary injunction and the trial on the merits. To alleviate potential irreparable harm to individual plaintiffs, the court will schedule the case for trial as early as the parties can be ready.

V.

*Conclusion*

In light of the foregoing, plaintiffs' jury demand will be stricken and the plaintiffs' motion for preliminary injunction will be consolidated with the trial on the merits.

Order accordingly.

s/ *Thomas W. Phillips*
UNITED STATES DISTRICT JUDGE