UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **CHARLES CURTIS,** *et al.,*  )<br>)<br>**Plaintiffs,**  )<br>)<br>**v.**  )<br>)<br>**ALCOA INC., Individually and as Fiduciary of the**  )<br>**Employees' Group Benefits Plan of Alcoa Inc., Plan II,**  )<br>)<br>**Defendant.**  )<br>) | **Civ. No. 3:06-cv-448**<br>**Judge Phillips** |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY FEES AND EXPENSES

Plaintiffs, pursuant to Fed. R. Civ. P. 54(d)(2)(B) and EDTN LR54.2, respectfully submit their memorandum of law in support of their motion for attorneys' fees and for leave to make a supplemental fee submission upon the entry of this Court's order with regard to the Plaintiffs' Motion for Clarification and to Amend Judgment Order, filed herewith.

### I.  INTRODUCTION

Plaintiffs show the Court that under its Findings of Fact and Conclusions of Law dated March 9, 2011, the Court has conferred an important benefit on Plaintiffs and the retiree group in expressly finding that the retiree medical benefits are vested, a position argued by Plaintiffs throughout this litigation. The Record and docket in this case make it clear that Defendant consistently contended that the benefits at issue are not vested, with or without a cap, and accordingly there is no lifetime right to medical benefits and they could be wholly cancelled at any time, as a result. Contrariwise, Plaintiffs have consistently alleged and contended that the medical benefits are vested. The Court has found the benefits are vested subject to a cap. The Court has furthermore found and concluded that the appropriate subsidy for the benefits is in excess of $7000

per year per pre-Medicare participant and in excess of $3000 per year per post-Medicare participant. These findings are important to retirees because they establish their right to vested lifetime retiree benefits at a capped level. Accordingly Plaintiffs respectfully show that it is within this Court's discretion to award attorneys' fees and expenses to Plaintiffs, and Plaintiffs respectfully submit this request along with their motion that the Court alter or amend its Judgment so as to clarify the Court's finding of a retiree and surviving spouse right to vested medical benefits.

## II. LEGAL STANDARD

Under ERISA § 502(g)(1), codified at 29 U.S.C. § 1132(g)(1), "In any action under this subchapter … the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *See generally Secretary of Dep't of Labor v. King*, 775 F.2d 666, 670 (6th Cir. 1985).

This provision serves ERISA's objective "to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). *See UAW v. Loral Corp.*, 107 F.3d 11 (table), 1997 WL 49077 at *4 (6th Cir. 1997) ("[O]ur law of attorney's fees should recognize the imbalance of power peculiar to the relationship between an employer and retired workers, and shift costs accordingly."); *Rankin v. Rots*, 2006 WL 1791377 at *2 (E.D. Mich. June 27, 2006) ("[T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases.").

In determining a motion for fees, district courts have traditionally considered the following factors: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions

2

regarding ERISA; and (5) the relative merits of the parties' positions. *Secretary of Department of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). Not all factors must be present to justify an award of assessed attorneys' fees. *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998) (stating no single factor is determinative); *Wells v. United States Steel*, 76 F.3d 731, 736 (6th Cir. 1996).

The Supreme Court has recently spoken on the issue of the proper legal standard under ERISA and ruled that a claimant seeking benefits under an ERISA-covered plan need not prove he was a "prevailing party" in order to be eligible for attorney's fees. *Hardt v. Reliance Standard Life Ins. Co.,* 130 S.Ct. 2149 (U.S. May 24, 2010). This case makes clear that a district court may award attorney's fees to plaintiffs who show only some success on the merits, but not an outright victory. In that case, the plaintiff alleged impairments related to carpal tunnel syndrome, and sought long-term disability benefits under the plan. Defendant denied the claim. Reviewing the administrative record under ERISA, the district court held that defendant did not consider all the relevant evidence and remanded the case to the plan administrator for reconsideration, stating that if defendant did not adequately consider all the evidence within 30 days of its order, judgment would be issued for plaintiff. On remand, the administrator awarded benefits.

Plaintiff moved for attorney's fees under ERISA, and the district court awarded them. On appeal, the Fourth Circuit vacated the fee award holding plaintiff was not a "prevailing party." Reversing, the Supreme Court found no basis for the assertion that ERISA's fee provision requires "prevailing party" status, as "prevailing party" was not a term in Section 502(g). Rather, the statute simply states that a court can award attorney's fees in its discretion. The Court also found that while a court's use of a factor test is permissible when deciding whether to award fees, consideration of the factors is not required but rather, a plaintiff must show "some degree of success on the merits" that is not "trivial" or "purely procedural" to justify fees. 130 S.Ct. 2149, 2158 (quoting

3

*Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)). The Supreme Court went on to state concerning the *King* five factor test that "[b]ecause these five factors bear no obvious relation to §1132(g)(1)'s text or to our fee shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Id.* The Court found that plaintiff had achieved some success on the merits, and that the district court had properly exercised its discretion to award fees: "[Plaintiff] has achieved some success on the merits, and the District Court properly exercised its discretion to award Hardt attorney's fees in this case." *Id.* at 2159 (internal quote marks omitted). Accordingly, the *Hardt* decision makes clear that district courts may award attorneys' fees to plaintiffs who obtain a decision that is less than a total victory but that reflects some success on the merits.[1]

Also instructive concerning interpretation of the *Hardt* opinion is a recent opinion in the case styled *Pemberton v. Reliance Standard Life Ins. Co.*, 2011 WL 882835 (E.D.Ky. March 10, 2011), in the Eastern District of Kentucky Central Division at Lexington before Chief Judge Jennifer Coffman. In *Pemberton*, plaintiff's counsel had obtained a remand from defendant Reliance's rejection of the plaintiff's claim for long-term disability benefits. Thereafter, Reliance reinstated plaintiff's benefits. Plaintiff's counsel filed for attorney's fees pursuant to the *Hardt* decision and Chief Judge Coffman found plaintiff's counsel had achieved "at least some degree of success on the merits." *Id.* at *2. Judge Coffman went through analysis of both the *King* five factor test and the ruling of the Supreme Court in *Hardt*. Citing to the language in *Hardt* that the five

---

[1] *Hardt* confirms the conclusions of pre-*Hardt* courts in the Sixth Circuit to the effect that even partial or limited success in an ERISA case may justify attorneys' fees. *See, e.g., McKay v. Reliance Standard Life Ins. Co.*, 654 F.Supp.2d 731, 736, 46 Employee Benefits Cas. 1272 (E.D. Tenn. March 3, 2009) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

factors "bear no obvious relation to §1132(g)(1)'s text or to our fee-shifting jurisprudence," Judge Coffman ruled that there was no need to apply the *King* factors because they would have no effect on the analysis. *Id.* at *3. Accordingly, Judge Coffman granted plaintiff's motion for an award of attorney's fees and costs. *Id.* at *3-4.

## III. ARGUMENT

The proceedings herein reflect that despite Alcoa's consistent contention that Plaintiffs were entitled to no vested benefits in this matter, the Court found that Plaintiffs did have a right to vested benefits.[2] Because this reflects "some degree of success on the merits" that is not "trivial" or "purely procedural" under the Supreme Court's precedent in *Hardt, supra,* this Court may award attorneys' fees and expenses to the Plaintiffs for obtaining this important benefit for the class.

### A. Throughout the Case, Plaintiffs Contended That They Had Vested Benefits and Alcoa Contended That They Did Not.

Throughout this case, the Plaintiffs alleged and contended that they had a right to vested retirement benefits, while Alcoa contended that they did not. As the Court observed in its Findings of Fact and Conclusions of Law filed on March 9, 2011 ("FOF"), "Plaintiffs filed suit against Alcoa, Inc., alleging that their healthcare benefits were vested and therefore, could not be reduced pursuant to the LMRA and ERISA." (FOF pp.1-2). Alcoa contested that allegation. Alcoa's position that the Plaintiffs did not have any right to vested benefits is evident from a review of the Court filings in this matter, including without limit as follows:

- Plaintiffs' first amended complaint (Doc #3) alleged that benefits were vested, however, Alcoa in its answer to the first amended complaint (Doc #11) claimed that the benefits were not vested. See paragraphs 9, 28, 61, 69 in both documents.

---

[2] While this conclusion is supported by the plain language of the Court's Findings of Fact and Conclusions of Law in this matter, the Court's Judgment Order does not include any declaration to this effect but rather dismisses the entire matter with prejudice. Accordingly, to resolve this contradiction the Plaintiffs have filed concurrently herewith their motion to clarify or amend the Judgment Order.

5

- Plaintiffs' fourth amended complaint (Doc #43) at paragraphs 9, 28, 61, 69 has similar allegations as to vesting and again Alcoa in its answer to the fourth amended complaint (Doc #56) denied all allegations of vesting at paragraphs 9, 28, 61, 69 thereof.[3]

- The Pre-Trial Order signed by the Court (Doc #456) states at page 4 that the "Factual Issues To Be Decided At Trial" include, as Plaintiff's Proposal, "Whether Plaintiffs were and are vested in their retiree health care benefits?," and, as Alcoa's Proposal, "What, if any, retiree health care benefits became vested upon Plaintiff's retirement?" (emphasis added).

- Alcoa's proposed findings of fact and conclusions of law (Doc. #507-2), at page viii and pages 75-76, contends that "the evidence does not support Plaintiff's contention that retiree medical benefits are vested." This contention is repeated elsewhere in the filing.

- Alcoa's response to Plaintiffs' proposed findings of fact and conclusions of law (Doc. #511-2), at page 1 reiterates that "Alcoa's position is that Plaintiff's retiree health benefits never vested." See also page 17, at paragraph 61(B), where Defendant contends: "The fact that there is a connection between the receipt of retiree health benefits and the receipt of pension benefits does not mean that health benefits vested…"

### B. After the Bench Trial Herein, this Court Found That Plaintiffs Do Have a Right to Vested Benefits.

In its earlier Opinions in the case, the Court did not find that the Plaintiffs had shown a right to vested benefits, even with a cap. See the Court's Order on the Plaintiffs' motion for a preliminary injunction (Doc #163) (declining to find that the Plaintiffs' benefits are vested); Order on the parties' cross-motions for summary judgment (Doc #392) (same).

Thus, the issue of whether the benefits were vested to any extent went to bench trial as a pending issue. In the Court's Findings of Fact and Conclusions of Law filed on March 9, 2011, the Court for the first time found that Plaintiffs did have a right to vested benefits (albeit, benefits

---

[3] The same analysis applies as to Plaintiffs' Fifth Amended Complaint (Doc. #169) and Alcoa's Answer (Doc. #176) at paragraphs 9, 32, 65, 80. In addition, see the discussion found in Plaintiffs' Brief in Support of their Motion for Clarification and/or Amendment of Judgment Order, filed herewith.

subject to a cap, rather than the uncapped benefits contended by the Plaintiffs at trial). Reviewing the Findings of Fact and Conclusions of Law, the plain language therein reflects that the Court determined that the benefits did vest, at the date of retirement and subject to a cap. What the Court rejected was the argument that the benefits vested before retirement and without a cap.

Thus at page 68 of its Findings, the Court stated that it "now turns to the question of whether the plaintiffs' health benefits are vested." The Court rejected Plaintiffs' contention "that their health benefits vested prior to retirement." (FOF, pp. 72-73). The Court found "that plaintiffs did not sustain their burden of proving that the parties intended that health benefits vest prior to retirement." (Id. p. 77). "Despite plaintiffs' assertions that the witnesses testified that they believed health benefits vested with pension benefits, it is clear from the weight of the testimony and the evidence that all three understood that health benefits did not vest prior to retirement." (Id.).

However, the Court stopped short of finding that the benefits were not vested at all. Instead, the Court found that the benefits were vested at the time of retirement, subject to the cap on the company's contributions:

> The CBAs linked eligibility for retiree health benefits to eligibility for a pension. The retiree health benefits provided by the CBAs included benefits to a surviving spouse, and a Medicare Supplement plan. The SPDs provided that retirees would receive retiree health benefits on the first day of their retirement and they would last until the death of the retiree.
>
> Since retirees are eligible to receive pension benefits for life, the act of tying retiree health benefits to pension eligibility indicates that the parties intended that the company provide lifetime health benefits as well. In determining vesting, the question is not whether or not there is a cap – benefits can still be vested at a capped level – but whether whatever benefit levels which were promised by the healthcare plan were promised to last past the expiration of a particular CBA. *Yard-Man*, 716 F.2d at 1479. The language of the CBAs and SPDs show that plaintiffs' health benefits are lifetime benefits. <u>Further proof that plaintiffs' health benefits are vested</u> is promises for benefits after Medicare eligibility and Medicare premium reimbursements, which would be illusory if the benefits were not vested<u>. Accordingly, the court finds that plaintiffs health benefits vested at time of their retirement, subject to the cap.</u>

(FOF, p. 78, emphasis added).[4]

> Here, as in *Wood*, the only coherent reading of the cap agreements establishes that Alcoa retirees are entitled to lifetime, capped healthcare benefits. In the 1993 cap letter, the parties agreed to limit the Companies' contribution toward retiree healthcare benefits without providing for an expiration date for the limitation. This indicates the shift made by the cap agreements, "which was from an entitlement of a defined benefit – fully funded, lifetime healthcare benefits – to a defined contribution, the capped dollar amount." *Id.* at 432. The vested rights of an employee who retired under one of the cap agreements were restricted by the parties' agreement to limit the Companies' contribution, and thus that employee could not have been entitled, at the point of that employee's retirement, to vested, lifetime, unlimited healthcare benefits.

(FOF, p. 81, emphasis added).

> Thus, retiree healthcare benefits are vested at the point of retirement because "the union owes no obligation to bargain for continued benefits for retirees" and because it would be unfair to allow future agreements between the employer and the union to reduce the health benefits of retirees when neither the union nor the employer is required to represent those retirees. *See Wood* 607 F.3d at 434 (*quoting Yard-Man,* 716 F.2d at 1479). Workers who retired after the cap agreements were effective received vested rights subject to the cap. The parties might have agreed in later years to provide greater benefits to the retirees, as they did in this case, but the vested rights were only to the capped contributions.

(FOF, p. 82, emphasis added). "Plaintiffs who retired after the effective date of a cap agreement were vested in their healthcare benefits subject to the limitations imposed by the cap." (Id., p. 100).

Clearly, Alcoa fought the vesting issue from the beginning to the end and the Court only found vesting in favor of the Plaintiff class after the trial. Accordingly, the facts reflect that the Plaintiffs have achieved some success on the merits obtaining a benefit conferred on the class, in the form of a Court finding of any vested, lifetime benefits. *Compare Hardt, supra*; *McKay, supra*, 654 F.Supp.2d at 736 (E.D. Tenn. March 3, 2009) (finding that plaintiffs may be entitled to ERISA attorney's fees purposes if "they succeed on any significant issue in litigation which achieves some

---

[4] The Plaintiffs' Proposed Findings of Fact and Conclusions of Law dated November 16, 2009, include numerous proposed findings and conclusions to the effect that the benefits were vested. *See, e.g., id.* pp. 11-18 (proposed findings and conclusions that benefits are vested). The quoted provisions in the FOF are similar to some of the provisions in the proposed Findings, further indicating that the Court agreed that the Plaintiffs prevailed on this discrete issue.

of the benefit the parties sought in bringing suit." (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

### C. This Court's Finding That Plaintiffs Have a Right to Vested Benefits Confers an Important Benefit on the Class.

The Court's finding that the Plaintiffs have a right to vested lifetime benefits at retirement subject to a cap, while not providing the full relief that the Plaintiffs sought, still confers an important benefit on the class. This is because vested benefits cannot be taken away, and implicit in the Court's finding that benefits are vested is a finding that they are vested at some level above $0.

In the regard, again, the Court's core finding was as follows: "[T]he court finds that plaintiffs' health benefits vested at time of their retirement, subject to the cap." (FOF, p. 78). While, according to the Court's findings, the cap agreement limited the company's contribution, the Court did <u>not</u> find, as argued for by Defendant, that the benefits were not vested at all – a conclusion that logically would allow the Defendant's contribution to be cut to zero since if the benefits are not vested at all, the company would not have to make any contribution at all. Rather the Court found the benefits were vested, subject to the limit of the cap: "The vested rights of an employee who retired under one of the cap agreements were <u>restricted</u> by the parties' agreement to limit the Companies' contribution…." (Id., p. 81, emphasis added). Instead of having no vested rights at all, the Plaintiffs have vested rights at least to the level of the capped contributions: "the vested rights were only to the capped contributions." (Id., p. 82). "Plaintiffs who retired after the effective date of a cap agreement were vested in their healthcare benefits <u>subject to the limitations imposed by the cap.</u>" (Id., p. 100, emphasis added).

As to the exact amount of the capped company contributions protected by the Plaintiffs' right of vesting, the Court found that "[t]he new cap letter, dated June 1, 2006, detailed the limitations on contributions by the Company as well as the notional account. Under the 2006 cap

9

agreement, Alcoa's per capita contributions were set at $7,767 per year for pre-Medicare retirees, a number reached after extensive negotiations by Alcoa and the Union." (FOF, p. 60). "The 2006 cap was set at $7,767 for pre-65/non-Medicare eligible retirees, which were the expected 2006 costs, by agreement of the parties." (Id., p. 61). "Finally, the court concludes that the 2006 CBA properly implemented the 2001 cap <u>at $7,767 for pre-65/non-Medicare eligible retirees and at $3,389 for post-65/Medicare eligible retirees</u>." (Id., p. 94, emphasis added).

Accordingly, the Court's Findings of Fact and Conclusions of Law reflect that the Plaintiffs have a right to vested retiree healthcare benefits at least insofar as Alcoa must contribute $7,767 per year per retiree for pre-65/non-Medicare eligible retirees and at $3,389 for post-65/Medicare eligible retirees.

### D. A Review of the Factors Commonly Considered in Fee Applications Reflects that Plaintiffs' Motion Should be Granted.

Applying the factors that Courts in the Sixth Circuit have generally applied under ERISA and with the proviso that under *Hardt* they are permissive, nonexclusive and not mandatory, Plaintiffs show that their fee application should be granted. As noted, the factors are: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *King*, *supra,* 775 F.2d 666, 669 (6th Cir. 1985); *Schwartz, supra*, 160 F.3d 1116, 1119 (6th Cir. 1998); *Wells, supra*, 76 F.3d 731, 736 (6th Cir. 1996); *Armistead v. Vernitron Corp*., 944 F.2d 1287, 1301 (6th Cir. 1991); *Foltice v. Guardsman Products, Inc*., 98 F.3d 933, 936-37 (6th Cir. 1996); *McKay , supra*, 654 F.Supp.2d 731 (E.D. Tenn. March 3, 2009) (evaluating ERISA fee petition and applying factors). Reviewing each of the factors:

### *(1) The degree of the opposing party's culpability or bad faith.*

Plaintiffs do not claim for the purpose of this motion bad faith on the part of Defendant. However, Plaintiffs do respectfully contend that the facts and law do clearly reflect a right to vested lifetime benefits (as the Court found) and accordingly that Defendant's refusal to even agree to that issue, but to stubbornly and repeatedly contend that benefits were not even vested at all, not even vested subject to a cap, was unjustified. In the Court's findings, the Court referenced the plan documents and collective bargaining agreement alone in finding that Plaintiffs' were entitled to some kind of vested benefits. As such, Defendant's continual denial of the any sort of vested benefits for Plaintiffs flew in the face of the documents themselves.

### *(2) The opposing party's ability to satisfy an award of attorney's fees.*

Alcoa is a very large company that can readily afford to satisfy such an award. The Court is familiar with the trial testimony as to the size of Alcoa and as to its financial condition.

### *(3) The deterrent effect of an award on other persons under similar circumstances.*

The award would reinforce the importance of preserving vested retirement benefits, which are of societal importance to particularly older workers and retirees and would act as a deterrent against employers unilaterally eliminating, and from unions agreeing to the elimination of, vested health care benefits. It would also act as a deterrent against Alcoa and the Steelworkers' Union from reducing Plaintiffs' vested health care benefits in future negotiations below the level of the cap, which, if the Court had not found the benefits to be vested, Alcoa and the Union otherwise might do. This is a case which affects thousands of retirees and surviving spouses. There has been testimony that other companies also entered into similar cap letters regarding retiree benefits as is also borne out in the case law. *E.g., Pringle v. Continental Tire North America, Inc.*, 541 F.Supp.2d 924, 932-33 (N.D.Ohio July 31, 2007) (discussion of cap letter). Without the Court's ruling that

Plaintiffs were entitled to vested, lifetime benefits, the retirees' right would not be preserved and Defendant in this case (and defendants in other similar cases) could unilaterally reduce or terminate the retiree health benefits. This case has significance to retirees in preserving vested benefits at capped levels both for the Class herein, and for other similarly situated individuals.

### (4) Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA.

This factor is clearly met. Plaintiffs sought to confer a common benefit on a very large class of similarly situated retirees covered by Alcoa's retiree health care plan and they sought a declaration of their vested benefits and their scope, which required the resolution of very significant and novel legal and factual questions, requiring in the end a substantial trial and lengthy and careful consideration by the Court. As shown above, Plaintiffs consistently alleged that they had a right to vested healthcare benefits. Alcoa consistently denied that allegation and contended that the Plaintiffs had no right to any vested benefits whatsoever. After holding its bench trial, the Court found that Plaintiffs have a right to vested benefits subject to the cap in place at the time of their retirement. This finding confers an important, tangible monetary benefit on the class members, because it means that Alcoa is currently required to contribute $7,767 per year per retiree for pre-65/non-Medicare eligible retirees and $3,389 for post-65/Medicare eligible retirees.

### (5) The relative merits of the parties' positions.

The merits of the proposition that benefits are vested (if still subject to a cap) are clear as reflected by the Court's findings of fact and conclusions of law. While Alcoa contended that the Plaintiffs had no right to vested benefits at all, the Court rejected this argument and found that the benefits were vested, though subject to a cap. In its findings the Court did not have to look further than the language of the plan documents themselves to find that the benefits were vested in some

capacity (even though the Court rejected the testimony and evidence from Plaintiffs' witnesses and contemporaneous notes and memos that they intended the cap never engage and legal arguments that on the face of the cap letter it was not meant to engage). Accordingly in this respect the Court found that the Plaintiffs' position that benefits were vested had far more support on the merits than the position of Alcoa that they were not. *Compare Richards v. Johnson & Johnson*, 2010 WL 3219138, *6 (E.D.Tenn. May 12, 2010) (in evaluating fee petition under ERISA, court accorded significant weight to this factor).

### E. The Amount of Fees and Expenses Sought by Plaintiffs is Reasonable.

Plaintiffs submit herewith declarations of counsel summarizing the credentials and qualifications of each law firm, the estimated amount of time and expenses incurred by each firm in the prosecution of this case, and with information regarding hourly rates that would be reasonable to apply for purposes of the instant submission.

Plaintiffs show that the fee request is supported under a "lodestar approach," which generally involves "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350, *5 (E. D. Mich. Sept. 28, 2000) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The "reasonable hourly rate" is determined by reference to the "prevailing market rates in the relevant community." *Jordan* at *5 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). In ascertaining the proper "community," district courts may "look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Entertainment, Inc.*, 37 Fed. Appx.730, 740 (6th Cir. 2002); *see also Louisville Black Police Officers Org. v. City of Louisville,* 700 F.2d 268, 278 (6th Cir. 1983). This is especially appropriate in areas of practice such as complex class action cases, where the nature of

the law is specialized, the cases are more complicated and time-consuming, and there may be substantial costs and a greater risk in pursuing the case.

Ascertaining the "prevailing market rates in the relevant community" involves consideration of experience, specialization, effort, and performance, and setting rates sufficient to ensure that class counsel are "fairly compensated for the amount of work done and the results achieved" and "that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *Rankin* at *1-2.

A measure of reasonable rates is provided by awards in other cases within the Sixth Circuit which have approved hourly rates of upwards of $500/hour for purposes of making these calculations. *See In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (noting that district court applied rates ranging from $200 to $500/hour); *Bailey v. AK Steel*, 2008 WL 553764, *3 (applying "lodestar" rates of $100 to $450 per hour); *Pringle v. Continental Tire North America*, No. 3:06-cv-02985, N.D. Ohio, Order filed Sept. 30, 2008 (Dkt. 164 and 137 of same) (approving hourly rates ranging from $375 to $475/hour for attorneys and $125/hour for paralegals).[5]

Here, Plaintiffs are represented by counsel from the community of lawyers who litigate in the complex and specialized context of federal labor law, ERISA benefits law, and class actions regionally and nationally. The qualifications and experience of Plaintiffs' counsel are detailed in the

---

[5] *See also UAW v. Chrysler, LLC*, No. 07-14310, E.D. Mich., Order filed May 16, 2008 (approving hourly rates ranging from $230 to $475/hour for attorneys and $125/hour for paralegals); *UAW v. General Motors Corp.*, No. 07-14074, E.D. Mich., Order dated July 31, 2008 (hourly rates ranging from $230 to $475/hour for attorneys and $125/hour for paralegals); *UAW v. Ford Motor Co.*, No. 05-74730, E.D. Mich., Order dated Dec. 27, 2007 (rates ranging from $375 to $450/hour for attorneys and $90/hour for paralegals); *UAW v. General Motors Corp.*, No. 05-73991, E.D. Mich., Order dated Sept. 24, 2007 ($375 to $450/hour for attorneys); *Van Horn v. Nationwide Property and Cas. Ins. Co.*, 2010 WL 1751995, *4 (N.D.Ohio April 30, 2010) (hourly rate for lead counsel of $450); *Northeast Coalition for the Homeless v. Brunner*, Case No. 2:06-cv-896 (S.D. Ohio Nov. 30, 2010) ($280 to $400/hour); *Entertainment Software Ass'n v. Granholm*, Case No. 2:05-cv-73634 (E.D. Mich. Nov. 30, 2006) ($165 to $585/hour).

Declarations of Gregory F. Coleman, Mona Lisa Wallace, and Robert S. Catapano-Friedman filed herewith. As reflected therein, the attorneys involved have many years of experience, have won and litigated noted results in high-profile cases, and have received numerous honors and accolades.

Accordingly, Plaintiffs respectfully suggest that for purposes of the lodestar analysis that hourly rates of $500/hour be applied for the senior attorneys including Gregory F. Coleman, Mona Lisa Wallace and Robert S. Catapano-Friedman, $400/hour for mid-level attorneys such as Sarah Catapano-Freidman, Mr. Schwaba and Mr. Hughes, and $100/hour for paralegals and specialized staff.

These rates for purposes of the lodestar analysis take into account the fact as well that under the "Laffey Matrix," which is another noted authority for fee-setting, the current hourly rates for attorneys such as Mr. Coleman, Mr. Catapano-Friedman and Ms. Wallace would be $709/hour, for Mr. Schwaba over $500/hour, and for paralegals over $160/hour. *See* Laffey Matrix, at Ms. Wallace's Declaration Ex. C; *see generally Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), *rev'd in part on other grounds*, 746 F.2d (D.C. Cir. 1984), *cert. denied,* 472 U.S. 1021 (1985); *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350, *6 (E.D. Mich. Sept. 28, 2000) (noting Laffey Matrix); *North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dept. of Transp.*, 168 F.Supp.2d 569, 579 (M.D.N.C., 2001) (reviewing Laffey Matrix rates); *Ilick v. Miller*, 68 F.Supp.2d 1169, 1176 (D. Nev. 1999) (same).

Furthermore, courts have stated that it may be relevant to review the hourly rates charged by defense firms during the relevant times. The rates sought are well below the hourly rates requested by lead defense counsel herein in other matters, *see, e.g., Malletier v. Dooney & Bourke, Inc.*, 2007 WL 1284013, *4 (S.D.N.Y. April 24, 2007) (noting that the Cravath law firm requested rates of "$825.00 for Mr. Broadwater, a 1969 law school graduate; $815.00 for Mr. Brooks, a 1987

graduate; FN4 $535.00 for Mr. Worcester, a 2002 graduate; $510.00 for Mr. O'Reilly, also a 2002 graduate; and $315 for Ms. Trombley, a 2006 graduate."). The rates are also within the ambit of rates reportedly charged by Tennessee defense firms. *See* Wallace Dec. Ex. D (report showing that during 2008, for example, the Baker Donelson law firm based in Tennessee charged up to $525/hour and the Bass, Berry & Sims law firm based in Tennessee charged up to $575/hour in 2008). Furthermore, the reasonability of the rates is attested to by the supporting declarations submitted herewith.

The declarations submitted herewith reflect that the law firms estimate that they have collectively incurred over 10,773 hours of work by attorneys and 1855 hours of work by staff to date (2953 attorney hours for Robert Catapano-Friedman and Sarah Catapano-Friedman, 4090 attorney hours and 555 staff hours for Greg Coleman Law PC, and 3730 attorney hours and 1300 staff hours for Wallace and Graham, P.A.). Applying the hourly rates proposed to the hours estimates yields a total "lodestar" figure of $5,019,900 ($1,370,800 for Robert Catapano-Friedman and Sarah Catapano-Friedman, $2,095,500 for Greg Coleman Law PC, and $1,553,600 for Wallace and Graham, P.A.). In addition, the firms have incurred cumulative costs in an amount in excess of $541,840.16 ($71,904.50 for Robert Catapano-Friedman and Sarah Catapano-Friedman, $69,515.66 for Greg Coleman Law PC, and $400,420 for Wallace and Graham, P.A.). Counsel respectfully show that the amount of fees and costs requested is reasonable in light of the important benefit conferred on the Class.[6]

---

[6] The lodestar amount requested by the Plaintiffs do not include any "multiplier" which the court may apply to increase the lodestar amount. *See, e.g., Yancey v. Carson*, 2008 WL 3876406, *5 (E.D.Tenn. Aug. 18, 2008) (in evaluating fee petition under ERISA, court noted that in exceptional cases a multiplier may be applied). However, the Court has the discretion to apply a multiplier should it find in resolving this motion and the related motion to clarify and amend judgment that Plaintiffs obtained an exceptional result in obtaining a finding that the benefits were vested (though subject to a cap).

Class Counsel respectfully request that the Court hold the instant motion in abeyance pending the Court's resolution of the Plaintiffs' contemporaneously filed motion to clarify or amend the judgment. In this regard Plaintiffs have concurrently herewith moved this Court to amend or alter its Judgment in this matter so as to clarify that the Court has found and declared that the Plaintiffs and the Class herein have proved that they have a right to vested lifetime retiree healthcare benefits at least up to the levels of the cap. The existing Judgment when read in light of the Findings of Fact and Conclusions of Law appears ambiguous, because although as discussed above the Findings clearly reflect that the Court found the Plaintiffs to have a right to vested benefits, the Judgment does not include this finding but instead merely dismissed the lawsuit in its entirety with prejudice. According to the Findings of Fact and Conclusions of Law, however, Plaintiffs have a right to vested benefits at the capped levels and it is within this Court's discretion to find that Plaintiffs are entitled to reimbursement of some or all of their attorneys' fees and costs. Accordingly, upon the Court's disposition of the motion to alter or amend judgment, Plaintiffs respectfully suggest that it would be appropriate for the Court to find that Plaintiffs are therefore entitled to an award of fees and costs in some amount and direct supplemental submissions as this Court may deem necessary to determine the amounts that should be awarded. In this regard, Plaintiffs respectfully show that should the Court wish to review their voluminous detailed time and expense records, the Court allow those records to be submitted for *in camera* review, as those records contain information that is protected by the attorney-client and work product privileges and/or that otherwise may be confidential and reflect attorney strategy and planning in what remains a pending litigation matter.

## CONCLUSION

For each and all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for approval of their request for attorneys' fees and costs.

Respectfully submitted, this the 23rd day of March, 2011.

s/Gregory F. Coleman
Gregory F. Coleman, Esq., BPR No. 014092
Attorney for Plaintiffs
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, TN 37902
(865) 247-0080 (telephone)
gcoleman@colemanedwardspc.com

s/Mona Lisa Wallace
Mona Lisa Wallace, Esq.
Attorney for Plaintiffs
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (telephone)
mwallace@wallacegraham.com
Admitted *Pro Hac Vice*

s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman
Attorney for Plaintiff
11 N. Pearl St, Suite 1609
Albany, New York 12207
(518) 463-7501 (telephone)
catapan@inbox.com
Admitted *Pro Hac Vice*

s/Sarah Catapano-Friedman
Sarah Catapano-Friedman, Esq.
Attorney for Plaintiffs
The Catapano-Friedman Law Firm
50 Franklin Street, 4th Floor
Boston, MA 02110
(617) 542-7711 (telephone)
scf@cflawfirm.com
Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

s/Gregory F. Coleman<br>
Gregory F. Coleman, Esq., BPR No. 014092