UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| CHARLES CURTIS, *et al.*, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | Civ. No. 3:06-cv-448 |
| | ) | Judge Phillips |
| v. | ) | |
| | ) | |
| ALCOA INC., Individually and as Fiduciary of the Employees' Group Benefits Plan of Alcoa Inc., Plan II, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION AND/OR AMENDMENT OF THE JUDGMENT ORDER

Plaintiffs respectfully submit their Reply Brief in Support of Plaintiffs' Motion for Clarification and/or Amendment of the Judgment Order.

## I. INTRODUCTION

In Defendant Alcoa Inc.'s Memorandum in Opposition to Plaintiffs' Motion for Clarification and/or Amendment of the Judgment Order (hereinafter referred to as "Memorandum"), the Defendant attempts to rewrite five years worth of history in their desperate attempt to avert a legitimate amendment to the Judgment Order. Having recognized that the Findings of Fact and Conclusions of Law (hereinafter referred to as "FOF") does not support the position Alcoa has held throughout the entire life of this litigation, that the Plaintiffs' retiree healthcare benefits were never vested, the Defendant attempts to reinvent its position to align itself with the plain statements of the FOF that should have been included in the Judgment Order. Then, having reinvented their position, Alcoa seeks to justify that position by asserting its largesse guarantees that the Plaintiffs' benefits are in excess of what the court determines they are entitled to in the

FOF. The Defendant ignores that being vested in a retirement benefit has tangible legal advantages and guarantees that someone who is not vested in that legal benefit simply does not have. The Plaintiffs trust that the Court will not allow Alcoa's distortion of history to prevent the Court from clarifying and amending the Judgment Order to accurately reflect the FOF.

## II. ARGUMENT

### A. Plaintiffs have demonstrated that the Judgment Order must be clarified and amended to reflect the language in the FOF.

It stretches the limits of credulity for Alcoa to now claim that "[e]ven before the Court's ruling, Alcoa was committed to providing benefits to members of the class at the 2006 cap level; as such, a formal order that those benefits are vested would provide members of the class with nothing more than what Alcoa has already agreed to give them." (Doc. 532, *Memorandum*, p. 2). The Plaintiffs are left to wonder where this benevolent Alcoa has been hiding as the one that has participated in this litigation has done everything other than agree to give the Plaintiffs anything.

Throughout the entirety of this litigation up to the filing of the Memorandum Alcoa has repeatedly, exclusively and consistently denied that any of the Plaintiffs' retiree healthcare benefits were vested. (See Doc. 526, *Plaintiffs' Memorandum in Support of Motion for Clarification and/or Amendment of the Judgment Order*, pp. 6-9). Now in its reinvented stance, Alcoa claims that it has said all along that, "either [Plaintiffs] did not have a vested right to retiree healthcare benefits or their benefits had vested subject to the earlier cap agreements." (Doc. 532, *Memorandum*, p. 7). But Alcoa in the Memorandum did not and cannot cite to a single instance before the Court's March 9, 2011 decision, where it had ever admitted that the Plaintiffs' benefits were vested. It

was only after the Court made that finding that Alcoa has claimed that it held this position. As such, because justice so requires, Plaintiffs have respectfully motioned the Court to amend the Judgment Order to prevent Alcoa from reinventing its position again at some point in the future to eliminate or reduce benefits to the Plaintiffs in part or in their entirety as a cost saving measure. Having vested retiree health care benefits provides legal certainty and rights that the Plaintiffs would not have if the Court had agreed with Alcoa's position that Plaintiffs were not vested in any capacity.

Alcoa next seeks to revise history by claiming that the Court's finding that the Plaintiffs' benefits were vested, albeit subject to the cap, was outside the scope of the relief sought by the Plaintiffs. Alcoa argues that the Court's finding on the threshold question of vesting is outside the ambit of the relief sought by the Plaintiffs, because the Court in finding that the benefits were vested additionally found that they were capped. While the all-or-nothing mentality is something Alcoa certainly subscribes to (as evidenced by their continuing denial throughout the case that the retiree benefits were vested at all, regardless of whether they were or were not capped), the Plaintiffs derived a significant benefit from their success in persuading the Court to find that their benefits were vested. According to Alcoa's logic (if it may be described as such) a plaintiff who seeks $1,000.00 in damages in its Complaint but who only receives a finding that it is entitled to $500.00 is not entitled to a judgment because the award is less than the total relief sought. Not only did Plaintiffs in Paragraph 2 of their Prayer for Relief in their Fifth Amended Complaint (and all other Complaints) ask this Court for permanent injunctive relief and in Paragraph 9 for "such other relief as the Court deems equitable and just", they expressly requested in Paragraph 4 of their Complaint the very declaratory

relief that they now seek in this motion. (See Doc. 169). Paragraph 4 of the prayer for relief expressly requests that this Honorable Court "[E]nter a declaratory judgment stating that Plaintiffs have vested welfare benefits to be provided by Defendant unreduced from those previously promised and provided to Plaintiffs at the time of retirement of Plaintiffs (or of Plaintiffs' spouse in the case where Plaintiff is a spouse or surviving spouse of a former employee of Defendant) or at the time of the employee's death while actively employed in the case of certain surviving spouses." This Court has in fact found in its FOF that Plaintiffs do "have vested welfare benefits" "at the time of retirement of Plaintiffs" and that "those [vested benefits] previously promised and provided Plaintiffs" were in fact benefits subject to the cap. It is, therefore, wholly proper and consistent with Plaintiff's Fourth Prayer for Relief for this Court to declare in its judgment that Plaintiffs are vested in their retiree healthcare benefits, subject to the cap, and specifying the amounts of the cap.

In making the argument that no declaration that Plaintiffs' benefits were vested need be mentioned in the Judgment Order Alcoa cites several obsolete cases, none of which bear on the issue. *Carter v. Nance*, 200 S.W.2d 457 (Ky. Ct. App. 1947), is a child custody case decided under the state law of Kentucky. Rather than standing for the proposition Alcoa asserts, that the brief Judgment Order does not need to reflect the specific language of the FOF to be clear, *Carter* stands for the exact opposite. In that case the trial judge had been very specific in its order declaring the custody rights of the father. "It is difficult to conceive how the chancellor could have used any clearer or more definite language in declaring the rights of these parties." *Id.* at 459. It was only in light of the trial judge's felicity of expression that the Kentucky Court of Appeals stated, [i]t is

not necessary that the declaratory judgment be in any particular form or that the phrase, 'the court declares the rights of the plaintiffs (or defendants) to be,' shall be used so long as the court *actually passes upon or adjudges the issues raised in the pleadings. Id.* (citation omitted)(emphasis supplied). Similarly, *Athenian Realty Corp. v. Southwestern Bell Telephone Co.*, 338 F.2d 1001 (5th Cir. 1964), provides no guidance because it is a two-paragraph *per curiam* opinion that does not explain why the Court of Appeals felt the statements of the trial Court's memorandum opinion cured an admittedly deficient judgment.

The other of the three cases cited by Alcoa, *The City of Quincy v. Sturhahn*, 18 Ill. 2d 604, 165 N.E.2d 271 (1960), supports the Plaintiffs' position more than it does that of Alcoa. In this case the City of Quincy had asked for a declaration as to the interests of the various parties with respect to a street. It filed a Motion for Summary Judgment that was granted wherein the trial court simply stated, "'that plaintiff's motion for a summary judgment be and the same is hereby granted and that judgment be entered for plaintiff and against defendants.'" 18 Ill. 2d at 610, 165 N.E.2d at 275. Alcoa quotes *Quincy* for the proposition that "'[N]o technical form is prescribed for a declaration of rights in a suit for declaratory judgment, and it is sufficient if the rights may be ascertained <u>from the findings of the court</u> . . . in view of the controversy presented." (Doc. 532, *Memorandum*, p. 8)(citation omitted). The Illinois Supreme Court did make that statement. But, after quoting the *Carter* case mentioned above, the Illinois Supreme Court went on to state even more relevant language Alcoa seems to have overlooked.

> Yet, even though effectual, such judgment which declares the rights as set forth in the findings is not to be commended as to its form. (Citation omitted).

> In view of the relative simplicity of the issues and despite the verbose pleadings in this case, the form of the judgment was adequate. A formal declaration that the city was the owner of the fee simple of the property in question and a pronouncement as to the other rights of the parties would have added nothing to the meaning of the judgment."

18 Ill. 2d at 611; 165 N.E.2d at 275-276.

Unlike the judgment in *Quincy* where the meaning of the judgment with respect to the declaratory relief could be gleaned from the judgment alone, the Court's Judgment Order in this case is completely silent as to the declaratory relief sought. Because the Judgment Order fails to address the issue of the declaratory relief requested by the Plaintiffs, it requires clarification and/or amendment.

Alcoa next claims there is no reason the Judgment Order "should" be amended. (Doc. 532, *Memorandum*, p. 8). Alcoa asserts that Plaintiffs have failed to demonstrate that it is anything other than a benevolent protector of its retirees' interests. While Alcoa's counsel may have "represented that Alcoa had no intention to fall short of its contractual obligation to provide benefits at a capped level" (Doc. 532, *Memorandum*, p. 9), Alcoa itself has not. Alcoa has denied during the entire pendency of this action that the Plaintiffs' healthcare benefits were even so much as vested.[1] For it now to claim that it has no intention of ever reducing or eliminating these benefits creates an irreconcilable cognitive dissonance in light of its history of objection to limiting its ability to do just

---

[1] In addition to the numerous denials that Plaintiffs' benefits were vested, as shown in their multiple Answers to Plaintiffs' Complaints, Response to Plaintiffs' Motion for Preliminary Injunction, Motion for Summary Judgment, and in the issues to be decided by the Court in the Pre-Trial Order, Alcoa's proof at trial was that "Alcoa does not vest retiree medical benefits"(Testimony of Nick Storm, Alcoa's Corporate Counsel, Tr. Trans. Pp. 1766-1767); "Again, I don't believe medical benefits vest" (Testimony of Russ Porter, Alcoa's Corporate Counsel and lead 1993 contract negotiator, Tr. Trans. pp. 1233-1234); "There is no vesting for retiree health benefits" (Testimony of Corporate Representative Joe Quaglia, Tr. Trans. pp. 2026-2027).

that. If Alcoa genuinely has no desire to ever reduce or eliminate the Plaintiffs' benefit, it should not be threatened by the inclusion of a statement to that effect that carries the weight of law in the Judgment Order which guarantees Plaintiffs the important benefit of the legal right to vested benefits which the Court enumerated in the FOF.

Finally, Plaintiffs are dumbfounded as to what Alcoa and its counsel mean when they state, "the Union is in a position to enforce Plaintiffs' rights under the [CBAs]" (Doc. 532, *Memorandum*, p. 9), when, "as *Yard-Man* makes clear and as later cases confirm, a union does not represent retired employees when it bargains a new contract for its employees." *Reese v. CNH America LLC*, 574 F.3d 315, 324 (6th Cir. 2009). In light of this black-letter legal principle, for Alcoa to make the assertion that, "[i]n fact, the Union continues to successfully represent Plaintiffs' interests . . . ," (Doc. 532, *Memorandum*, p. 10, fn. 4), it is either tragically ill-informed or unrepentantly disingenuous.

Therefore, to keep Alcoa from again revising its position to suit the exigencies of the moment it is absolutely necessary for the Court to amend the Judgment Order to be consistent with its FOF to declare that the Plaintiffs' retiree healthcare benefits are vested and subject to the annual contribution cap of $7,767 per pre-Medicare retiree and $3,389.00 per Medicare eligible retiree, which cap amounts Alcoa agreed to with the Union, consistently affirmed in these proceedings, and again admits in their response papers to this motion. It is also necessary for this court to enjoin Alcoa from contributing less than the cap amounts.

**B. Plaintiffs have demonstrated that the Judgment Order must be clarified and amended to reflect the language in the FOF that sets a specific amount for the cap to prevent Alcoa from reducing its obligations under the plan.**

Alcoa's second novel argument is that the Court need not set any specific amount under the cap because "Alcoa is fully committed to stand by its obligations under that [2006] cap letter." (Doc. 532, *Memorandum*, p. 11). However, its contrary position throughout this litigation and its recent actions as outlined in the 2010 health care summary attached to the Coleman Declaration (filed with Plaintiffs' original Motion for Clarification and/or Amendment of the Judgment Order) which increases the premiums and deductible obligations of retirees shed doubt on the level of Alcoa's commitment.

Alcoa is correct that it was and remains the Plaintiffs' primary position that their benefits were promised to them and vested not subject to any cap. The Court found the benefits were vested and subject to a cap. [Note that the Plaintiffs did in fact present at trial through their actuary and in their FOF requests an alternative position of vesting subject to a delineated cap]. But, Alcoa having consistently denied the retirees were vested in any benefits at all, Plaintiffs are now understandably wary of trusting Alcoa not to try to reduce or eliminate their benefits in the future by manipulation of their obligations under the cap unless the Court explicitly sets an amount in the Judgment Order. Alcoa's protestation that the Plaintiffs' did not seek a determination of a cap amount in the Complaint is irrelevant and inaccurate. Alcoa likewise did not seek to have the Court find a vested cap amount it now says it happily embraces—as long as it does not contain any limitations whatsoever on its future actions with regard to the retiree health care benefits. As stated above, the Plaintiffs did seek a declaration of the extent

of their vested benefits and inclusion of the precise cap amounts in that declaration is fully consistent with Plaintiffs' request.

Also, contrary to Alcoa's position, *Reese v. CNH America LLC*, 574 F.3d 315 (6th Cir. 2009), contains no language that would militate against the Court amending the Judgment Order to set a specific cap amount. Alcoa's assertion that, "Plaintiffs are effectively asking the Court to reverse its decision upholding Alcoa's capped plan (which anticipates that future cost increases will be borne by retirees) and write Reese out of its Findings and Conclusions," is wrong. While *Reese* may be interpreted to hold that employers are allowed to make reasonable changes to plans, the opinion does not define what a reasonable change is. *Id.* at 327. That being the case, having the Court set a specific cap amount provides clarity and certainty for all parties. The Plaintiffs' are puzzled as to the basis for Alcoa's claim that any statement in the FOF that anticipates that future health care cost increases would be a burden placed on retirees is inconsistent with the relief now sought. A clarification and amendment to the Judgment Order of not only that Plaintiffs' benefits are vested at capped levels, but also of the specific amounts of the cap, is necessary on this point to prevent Alcoa from trying to do on the back end (by reducing its contributions below capped levels by in the future reinventing the cap amounts and commensurately increasing premiums and deductible to levels unsustainable by fixed income retirees thus driving them to drop Alcoa provided health care coverage) what it could not do on the front end by dropping coverage on retirees at its discretion altogether if the revised judgment merely declared those benefits to be vested without a clear articulated and precise cap. Setting a specific amount for the cap that protects retirees has nothing to do with reasonable modification to the plan as discussed in Reese

but instead ensures that Alcoa cannot unilaterally reduce its obligations to pay for the actual benefits provided.

It is wholly disingenuous for Alcoa to claim that it provides additional "benefits" for the Plaintiff retirees pursuant to the 2010 proposed CBA. The $1,750.00 lump sum payment for surviving spouses does nothing for any living retiree or retiree's spouse. And while in the lofty towers of Alcoa's Pittsburgh offices, a $10 per month or $5 per month increase in monthly premiums might be "modest," for a Plaintiff who retired in 1993 and lives on a fixed income $10 per month or $5 per month is a significant amount. And what is more, absent a specific provision in the Judgment Order, there is nothing preventing Alcoa from increasing the $10 amount to $100 or even $1,000 in the future regardless of Alcoa's cost under the premise that "healthcare costs are rising unpredictably." Such a change would drive numerous retirees out of the coverage, and while Alcoa would no doubt lament such an unfortunate necessity, it would reap the benefits of not having to pay anything for the retirees forced out of the program, thereby reducing its own retiree healthcare obligations.

Plaintiffs are also mystified as to what evidence in the case they cite when Alcoa states, "Alcoa's actuaries currently predict that all of these changes, taken together, would extend the life of the notional account beyond 2017, to 2020, and thus forestall the date by which retirees would be required to bear 100% of the costs exceeding the cap." (Doc. 532, *Memorandum*, p. 15). Alcoa has not provided any citation or source for this bald and unverifiable assertion. If the Plaintiffs' submission of the materials in the Coleman Declaration, amounts to an "attempt to shoehorn" a challenge to the 2010 CBA,

then Alcoa's reliance on phantom actuaries amounts to a soft shoe dance with the facts to justify its own reliance on the 2010 CBA.

### III. CONCLUSION

Plaintiffs respectfully state that justice demands that the Court modify the Judgment Order for the reasons set forth in Plaintiffs' original Motion for Clarification and/or Amendment of the Judgment Order and the Reply contained herein.

RESPECTFULLY SUBMITTED,

s/Gregory F. Coleman
Gregory F. Coleman, BPR No. 014092
Greg Coleman Law PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, TN 37902
(865) 247-0080 (phone)
(865) 522-0049 (fax)
greg@gregcolemanlaw.com

s/Mona Lisa Wallace
Mona Lisa Wallace
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
(800) 849-5291 (phone)
(704) 633-9424 (fax)
mwallace@wallacegraham.com
Admitted Pro Hac Vice

s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman
Robert S. Catapano-Friedman, P.C.
11 N. Pearl St., Suite 1609, Box 45
Albany, New York 12207
(518) 463-7501 (phone)
(518) 463-7502 (fax)
catapan@inbox.com
Admitted Pro Hac Vice

s/Sarah Catapano-Friedman
Sarah Catapano-Friedman

Robert S. Catapano-Friedman, P.C.
The Catapano-Friedman Law Firm
50 Franklin Street, 4th Floor
Boston, MA 02110
(617) 542-7711 (phone)
617-542-7712 (fax)
scf@cflawfirm.com
Admitted Pro Hac Vice

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify on this _____ day of April, 2011, I electronically filed the foregoing REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION AND/OR AMENDMENT OF THE JUDGMENT ORDER with the Clerk of the Court using the CM/ECF filing system, which will electronically serve on the same date, the attorneys for Defendant as indicated on the electronic filing receipt.

                                     s/Gregory F. Coleman
                                       Gregory F. Coleman